**Brenda LAMERE, Plaintiff,**

v.

**NEW YORK STATE OFFICE FOR THE AGING, Jack Tuck, et al., Defendants.**

**No. 1:03–CV–356 TJM/RFT.**

United States District Court, N.D. New York.

June 29, 2004.

Marc H. Goldberg, Honen & Wood, P.C., Albany, NY, for plaintiff.

Kelly Munkwitz, Assistant Attorney General, Hon. Eliot Spitzer, Attorney General of the State of New York, Lane, Lynch, Bush, & Nysofa, Albany, NY, for Defendants.

Meredith H. Savitt, Meredith H. Savitt, P.C., Albany, NY, for defendant Tuck.

## MEMORANDUM DECISION AND ORDER

TREECE, United States Magistrate Judge.

As we near the close of discovery in this case, a disagreement has arisen regarding the scope of inquiry during a deposition of a treating physician, who, incidentally, has not been retained as an expert, and whether this treating physician is entitled to a reasonable fee from the deposing party for the testimony to be provided at the deposition.

## I. FACTS

On August 25, 2003, the Plaintiff responded to an Interrogatory seeking the identity of experts, by stating that she had not retained any experts but would be calling three of her treating physicians and health care providers as witnesses. Those three treating physicians were identified as Drs. Gail Casals, Shirley McMorris and Marry Panzetta. From all accounts, we presume that the Plaintiff's medical records either preceded or accompanied this disclosure. All three doctors were served, respectively, by the Defendants with a subpoena to provide testimony during a deposition, paid the statutory witness fee pursuant to 28 U.S.C. § 1821, and were deposed. It appears from the record that Dr. Panzetta, a board certified psychiatrist, was the last to be deposed, and it is from her deposition that the issues before us evolve.

Dr. Panzetta was deposed on April 19, 2004, for 1½ hours. The Defendants were intending to complete this deposition on a subsequent date when they were advised by Dr. Panzetta that she would not return to complete the deposition unless she was paid a reasonable fee; in this regard, she quoted to Defendants a retainer of $2,025 in connection with her preparation and attendance at the deposition. Obviously, the Defendants refused to pay such fee, and the Plaintiff is unwilling to pay this fee either. The Plaintiff's perspective is that the Defendants were provided all of her medical records and it was their strategic election to seek these depositions, therefore, they should pay the fee. The Defendants are not willing to relent on this issue and wish to compel Dr. Panzetta to complete her deposition, which they have represented to the Court would not last longer than 1½ hours, at best.

In addition to whether this treating physician is entitled to a fee for being deposed, the Plaintiff submits that the Defendants at the April 19th deposition of Dr. Panzetta's were

asking questions seeking opinions, basis of treatment protocol, diagnosis and definitions of medical terms, and that such inquiries were and are improper with regard to a treating physician who has not been retained to provide expert testimony. Plaintiff has subsequently retreated from such a blanket objection and now concedes that treatment, causation, and diagnosis are proper fields of inquiry. In defense of their inquiries, Defendants state that they were merely seeking further explanation of what was set forth in the medical records and to determine if the various statements reflected therein were consistent. For example, Defendants draw our attention to such inquiries that probed Dr. Panzetta to decipher abbreviations employed by her and what they meant as related to the treatment of Brenda Lamere, as well as explanations of the scope of treatment and what was or was not considered in rendering a diagnosis. The extent of the inquiry notwithstanding, the primary issue for this Court to address is whether a treating physician can command a reasonable fee much like an identified expert or is relegated to receiving the established witness attendance fee of $40 set by 28 U.S.C. § 1821. Before, however, we address such issue, we inevitably must identify the type of witness a non-retained treating physician would be classified, along with an analysis of the scope of inquiry permitted of them.

## II. DISCUSSION

### A. Expert Witness v. Fact Witness

█ In order for this Court to decide whether Dr. Panzetta is entitled to a reasonable fee, we must decide the nature of this witness. The first issue then for this Court is to consider whether a treating physician, for testimonial purposes, is either an expert witness, a fact witness, or a combination of both. Depending upon that determination, we must then ascertain what discovery rule are applicable. Or, conversely, we may need to look first to the applicable discovery rules

set forth in the Federal Rules of Civil Procedure as determinative on the status of a treating physician in terms of classifying the nature of her testimony.

The law is not well developed as to what may and how to define a treating physician, and, for the most part, the distinction between a treating physician being viewed as either an expert or a fact witness is rather opaque. Some have suggested that a treating physician is, in essence, a lay witness, and the basis of her testimony would be found in FED. R. EVID. 701:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Though it may appear that a treating physician may testify to her perceptions of the party's medical condition as gleaned from her treatment of her patient and, certainly, her testimony would be helpful in making the details of the treatment clear to the finder of fact, clearly a treating physician's testimony is far more broader than the opinion permitted by this Rule.[1] It is a given that there are facts to which a treating physician would testify to in order to explain the treatment, diagnosis, and prognosis provided to the patient. Those facts would be the patient's ongoing medical history, the course of treatment, medication and other prescriptions, and any other relevant facts germane to the course of treatment. But we cannot completely limit a treating physician to solely factual testimony. A treating physician is no less a person with specialized knowledge and, in the scheme of her physician duties, provides opinions of various nature in the process of treating to her patient. In this respect, we view the doctor's testimony as far

---

1. The only reported case we found that has referred to a treating physician as a lay witness is *Greenfeld v. Memorial Sloan Kettering Hospital,* 2000 WL 351395, at *6 (S.D.N.Y. Apr. 5, 2000): "What is meant by 'lay witness' is that these are witnesses that have not examined [a patient] or his medical conditions with the specific purpose of rendering an opinion for this litigation." As this decision will establish, we partially disagree with this specific assessment.

broader than just a mere fact witness but as an expert in that the doctor's

> [ ] scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue[.] [A] witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.

The distinction between a lay witness's and an expert witness's opinion is that a lay witness provides an opinion " 'result[ing] from a process of reasoning familiar with everyday life,' while [an] expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.' " FED. R. EVID. 701 (Advisory Committee Notes, Amendment 2000). And, Rule 701(c) makes it evidently clear that if the opinion provided is based upon "scientific, technical, [and] other specialized knowledge within the scope of Rule 702" then the witness is deemed to be an expert. WEINSTEIN'S EVIDENCE MANUAL at § 10.03 (2003). Therefore, we can comfortably conclude that a treating physician's testimony is governed by Rule 702, rather than Rule 701,[2] but our analysis of whether they are an expert witness in terms of our issue does not end there.

We must next turn to the federal rules on discovery. In 1993, Congress amended FED. R. CIV. P. 26(a)(2), and by doing so, may have created three separate classes of experts.[3] First, any witness who may be used at trial to present evidence under FED. R. EVID. 702 must be disclosed. FED. R. CIV. P. 26(a)(2)(A). Since a treating physician's testimony is encompassed by Rule 702, her identity must be disclosed, pursuant to this discovery provision, as an expert of sorts,

though on a limited basis. But Rule 26(a)(2)(B) creates further classifications regarding expert testimony:

> Except as otherwise stipulated or directed by the court, this disclosure shall, **with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony**, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years. (emphasis added).

If a witness has been retained or specially employed to provide expert testimony, the retaining party must serve an expert report within the time frame set forth in FED. R. CIV. P. 26(a)(2)(C). Furthermore, whether or not a doctor has been retained, as long as they have been identified as a witness who will provide expert opinion testimony, pursuant to Rule 702, they may be deposed. FED. R. CIV. P. 26(b)(4)(A). A major distinction then between Rule 26(a)(2) subsections A and B experts is that a **retained** expert, under subsection B, must disclose his opinion in a written report before being deposed. *Id.*

■ Generally speaking a treating physician testifies only to the care and treatment of a patient (*Salas v. United States*, 165 F.R.D. 31, 33 (W.D.N.Y.1995)), but must they submit a written report in addition to the

---

2. Notably, if a witness is identified as a lay witness, disclosure of such witness is governed by FED. R. CIV. P. 26(a)(1) and (3).

3. This may be a trivial point, though over looked in other discussions, but FED. R. CIV. P. 26(a)(2) is

entitled, *Disclosure of Expert Testimony*. This is just another, though minute, indication that probably treating physicians are considered expert witnesses as opposed to being solely fact witnesses.

medical records they have kept of their treatment of the patient? Under the above analysis, the critical factor in determining when a report is due prior to the delivery of any testimony is whether the doctor has been retained in anticipation of litigation or preparation for trial. *Zanowic v. Ashcroft (I)*, 2002 WL 373229, at *2 (S.D.N.Y. Mar. 8, 2002). As explained in the Advisory Committee Notes, the requirement of an expert report applies only to those witnesses who are retained or specially employed experts, and, an exception is carved out for treating physicians: "treating physicians, can be deposed or called to testify at trial without the requirement of a written report." FED. R. CIV. P. 26(a)(2) (Advisory Committee Notes, Amendment 1993). That is, although she discusses the care and treatment of her patient and offers opinion testimony as permitted by Rule 702, treating doctors are deemed to be neither retained nor specially employed experts, unless they were specifically retained for such litigation purposes. *Zanowic (I)*, 2002 WL 373229, at *2 ("[Whether] a physician is a treating or consulting physician appears to turn on why the patient saw the physician—for treatment or for testimony."); *McEachron v. Glans*, 1999 WL 33597331, at *3 (N.D.N.Y. Feb. 24, 1999) (testimony of a treating physician is not governed by FED. R. CIV. P. 26(a)(2)(B) as to matters within the normal scope of the physician's treatment of the patient); *Brundidge v. City of Buffalo*, 79 F.Supp.2d 219, 224 (W.D.N.Y.1999) (doctors testifying to their personal consultation with their patient need not be disclosed pursuant to FED. R. CIV. P. 26(a)(2)(B)); *see also supra*, n. 1. However should the doctor's testimony extend beyond those facts and opinions characteristically related to the care and treatment of the patient, the doctor may be required to provide a written report as mandated by Rule 26(a)(2)(B). *Peck v. Hudson City School Dist.*, 100 F.Supp.2d 118, 120–21 (N.D.N.Y. 2000); *Salas v. United States*, 165 F.R.D. at

33.[4] Thus, under this analysis, a treating physician is an expert witness who can provide opinion testimony consistent with Rule 702, must be identified for the purpose of being subjected to further disclosure, such as a deposition or interrogatories, but does not have to provide a written report before being deposed or testifying at trial. *Hoover v. United States*, 2002 WL 1949734, at *6 (N.D.Ill. Aug. 22, 2002) ("A treating physician who may be called to testify clearly falls within the definition of an expert as that term is used in Rule 26(a)(2)(A).").

### B. Scope of Testimony

Now that we have classified a treating physician as one of those types of experts recognized under FED. R. CIV. P. 26(a)(2) and FED. R. EVID. 702, we must now determine the scope of her testimony. To reiterate, we must remain mindful that the scope of the testimony is not bound by the strict disclosure requirements of FED. R. CIV. P. 26(a)(2)(B). *Zanowic v. Ashcroft (I)*, 2002 WL 373229, at *3; *Salas v. United States*, 165 F.R.D. at 33. However, we cannot ignore the pertinent observation that the medical reports of the course of treatment are, in essence, an early disclosure of opinions before a deposition or testimony is conducted.

▮ Many courts within this Circuit agree, as they do with other district courts throughout the country, as to the scope of the testimony to be provided by a treating physician, whether by deposition or at trial. It is indeed certain that a treating physician, who has not complied with the reporting requirement of Rule 26(a)(2)(B), should not be permitted to render opinions outside the course of treatment and beyond the reasonable reading of the medical records. *McEachron v. Glans*, 1999 WL 33597331, at *4 (finding that the doctor cannot testify as to information gained outside the scope of treatment). But most, if not all, courts that have considered this issue recognize that a treating phy-

---

4. Normally, a retained medical expert reviews other materials outside the treatment modality in rendering her opinion, and based upon that review, as well as the medical records, may render more expansive opinions on the issues germane to the litigation. Thus, if a treating physician is called upon to review similar materials outside the four corners of her medical records and to opine greater than what is reflected in those medical records, we then would be of the view that such treating physician now falls with the parameters of FED. R. CIV. P. 26(a)(2)(B), and a report is required. *McEachron v. Glans*, 1999 WL 33597331, at *4.

sician often forms opinions and makes determinations during the various stages of the course of treatment. *Santoro v. Signature Const., Inc.*, 2002 WL 31059292, at *4 (N.D.N.Y. Sept. 16, 2002). With this in mind, these courts have permitted a treating physician to testify to a host of opinions and determinations. *Bujnicki v. Am. Paving and Excavating Inc.*, 2004 WL 1071736, at *21 (Feb. 25, 2004) (treating physician can testify to everything learned during the course of treatment); *Santoro v. Signature*, 2002 WL 31059292, at *4–5 (treating physicians have routinely been permitted to testify to determinations made and the opinions formed during the course of providing treatment, including cause of an injury and the severity); *Zanowic v. Ashcroft*, 2002 WL 373229, at *3 (treating physician can express an opinion as to the cause of any medical condition present in a patient, the diagnosis, the prognosis and the extent of the disability); *Giladi v. Strauch*, 2001 WL 388052 (S.D.N.Y. Apr. 16, 2001) (a treating physician can testify as to opinions formed during the course of treatment and not with regard to Rule 26(a)(2)(B)); *Greenfeld v. Mem.'l Sloan Kettering Hosp.*, 2000 WL 351395, at *6 (S.D.N.Y. Apr. 5, 2000) (treating physician can testify to anything that comes within their professional care such as probable causes, past and present conditions and future treatment, and further, such testimony can include explanations of technical medical terms); *McEachron v. Glans*, 1999 WL 33597331, at *4 (treating physician can testify or be deposed on life expectancy and pain and suffering, if reflected in the medical records); *Brundidge v. City of Buffalo*, 79 F.Supp.2d at 224–25 (treating physician can give an opinion based upon the knowledge acquired or developed during the course of treatment and can give an opinion as to the cause of injury); *Quarantillo v. Consol. Rail Corp.*, 106 F.R.D. 435, 437 (W.D.N.Y.1985) (the court directed a deposition with further instructions that the doctor was not precluded from providing testimony with respect to

examination, diagnosis, findings, and opinions regarding the patient's back conditions).

■ The Plaintiff has challenged the inquiries made by the Defendants of Dr. Panzetta in the initial segment of her deposition as improper and beyond the scope of a permitted interrogation of a treating physician. The Court has reviewed the transcript of this segment of the deposition and cannot disagree with the Plaintiff more. All of the questions asked are permitted as confirmed by the case precedents set forth above. They sought, *inter alia*, explanations of the numerous abbreviations employed by the doctor; the numerous statements received during the course of treatment; the psychological diagnoses, and whether other critical information about the Plaintiff, if known by the treating physician, would have impacted or changed the diagnoses. Admittedly, several inquiries appear to peer into materials outside the scope of the doctor's notes, but those lines of inquires were not pursued nor fully explored. During a telephone conference held on June 1, 2004, on this issue, the Defendants assured the Court that any further inquiries would be primarily concerning new notes just revealed to them, as to causation and diagnosis. Since the Defendants are entitled to this deposition, pursuant to Rule 26(b)(4)(A), they will be permitted to continue with their deposition of Dr. Panzetta and may ask question about: the course of treatment; determinations, opinions and diagnoses; prognosis; pain and suffering; probable cause of the injury; past and present conditions; and everything acquired during the scope of treating Brenda Lamere.[5]

## C. *Reasonable Fee v. Statutory Fee*

■ Where there is near unanimity on the scope of a treating physician's testimony, none can be found as to what fee a treating, non-retained physician can receive for a deposition. First, only one circuit court has ruled on this issue. *Irons v. Karceski*, 74 F.3d 1262 (D.C.Cir.1995). The Second Circuit and other circuits have not considered

---

**5.** Whether the Defendants can complete the breadth of this interrogation within the self-imposed time constraints is rather difficult to project. However, the deposition belongs to the Defendants to conduct as they see fit within the parameter set by this Memorandum Decision and Order and, of course, the Federal Rules.

the issue, which is quite understandable considering that district courts have wide discretion on discovery issues, and generally, the circuits would not get an opportunity to review these types of discovery disputes nor have such matters brought to their attention unless there is a possible abuse of discretion. The district courts in the Second Circuit are split down the middle on what would be the appropriate fee under these circumstances. *Zanowic v. Ashcroft (II)*, 2002 WL 826878, at *1 (S.D.N.Y Apr. 30, 2002). In fact, district courts in the Second Circuit do not stand alone on this dilemma; there appears to be a lack of consensus nationally as well. *Id.* (citing *Demar v. United States*, 199 F.R.D. 617, 618 (N.D.Ill.2001)) (The district courts that have addressed this issue are, essentially, split.).[6] This split not only encompasses the ultimate conclusion, but the analysis as well. No matter the disposition, it is difficult to find a common thread or perspective in support of either view. However, the resolution of this issue turns on whether treating physicians are "experts."

One pervasive view is that a treating physician is no different from any other fact witness and is not entitled to more than the $40 authorized by 28 U.S.C. § 1821.[7] The underlying premise for such a determination is the observation that treating physicians are not "experts" within the context of FED. R. CIV. P. 26(a)(2)(B) and (b)(4)(C). *Brundidge v. City of Buffalo*, 79 F.Supp.2d at 224. Just because treating physicians opine on many aspects of the treatment, these courts have found that such does not make them "experts." *DeRienzo v. Metro. Trans. Auth. and Metro–North Rail Rd.*, 2004 WL 67479, at *2 (S.D.N.Y., Jan. 15, 2004). For these courts, experts are those who are "retained for the purpose of trial and their opinions are based on knowledge acquired or developed in anticipation of litigation for trial." *Mangla, M.D. v. Univ. of Rochester*, 168 F.R.D. 137, 139 (W.D.N.Y.1996) (cited in *DeRienzo v. Metro. Trans.*, 2004 WL 67479, at *2). To consider otherwise, would be converting a fact witness into an expert witness "merely by designation," and, essentially, would "cloak a discovery source in a protective veil" which was not contemplated by the discovery rules. *Matias v. United States*, 1999 WL 1022132, at *1. Under this reasoning, if a treating physician is conferred the status of an "expert," they would be creating a problematic slippery slope by entering into the business of bestowing special treatment on witnesses. *Zanowic v. Ashcroft (II)*, 2002 WL 826878, at *2 (finding that the authority to make such changes to 28 U.S.C. § 1821 belongs with the legislature and not the courts). *See also Baker v. Taco Bell Corp.*, 163 F.R.D. 348 (D.Col.1995).

But this Court finds itself in the opposing camp and submits that treating physicians are entitled to a reasonable fee, though in drawing this conclusion we are not entirely relying upon the analysis of those courts ruling similarly. In finding that a treating physician was entitled to a reasonable fee, the court in *Bujnicki v. American Paving*, laid the blame for bearing this expense at the feet of the defendants who exercised their right to a deposition. 2004 WL 1071736, at *19. It was their strategic decision not to rely upon the medical records and pursue a deposition. Since they "gained valuable information to enable them to assess the plain-

---

6. A well read treatise on federal practice has similarly recognized that there is a split of authority on the issue of whether fact witnesses akin to treating physicians are entitled to a reasonable fee. 6 JAMES WM MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 26.80[3] (3d Ed. 2003). Taking a stance on this lack of consensus, this treatise opines that "[t]he better view is that such fact witnesses are generally entitled to the statutory witness fee." *Id.* We do accept MOORE'S posit as to fact witnesses but do not adopt it when it extends to treating physicians.

7. 28 U.S.C. § 1821 reads, in relevant part, as follows:

(a)(1) Except as otherwise provided by law, a witness in attendance at any court of the United States, or before a United States Magistrate Judge, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided by this section. (2) (omitted). (b) A witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

tiff's case" by pursuing a deposition, the cost should be the defendant's burden and not the plaintiff. *Id.* This Court finds an aspect of this reasoning persuasive.

Contrary to the courts in *Brundidge, DeRienzo,* and *Mangla,* United States Magistrate Judge Heckman found that treating physicians are entitled to a reasonable fee pursuant to Rule 26(b)(4)(C). *Coleman v. Dydula,* 190 F.R.D. 320, 323–24 (W.D.N.Y.1999) (finding at $250 per hour was a reasonable fee) (citations omitted);[8] *see also Giladi v. Strauch,* 2001 WL 388052, at *9, n. 7 (S.D.N.Y. Apr. 16, 2001) (ordering defendants to remit $7,031.25 as reimbursement for portion of the treating physician's fee). The *Coleman* decision rests mostly on the determination that treating physicians are providing expert opinions pursuant to FED. R. EVID. 702, which we have already discussed and concluded above. *See supra,* Part II.A. Doctors bring extraordinary insight into facts which can only be gleaned through their scientific or specialized knowledge. A lay person, because they lack such scientific training, could not provide the same cogent perspective on the facts. Moreover, the opinions that doctors provide are often

considered a matter of art that, once again, derive from specialized knowledge. In this respect, there is a true dichotomy between a doctor and lay witness, and thus, in our view, doctors can only be seen as experts, unless they are witnesses observing an occurrence much like, or in a similar nature, as nondoctors would (e.g., a car accident or an incident on the street).

In conjunction with finding that the testimony enters through Rule 702, we have also found above that the treating physician is an expert witness as contemplated within the meaning of FED. R. CIV. P. 26(a)(2)(A). *See Giladi v. Strauch,* 2001 WL 388052, at *9. Lest we forget, a Rule 26(a)(2)(A) expert can provide opinions consistent within the source of treatment without the requirement of a written report as demanded in Rule 26(a)(2)(B). Yet, to solidify our rationale, we turn to Rule 26(b)(4)(C) itself and the corresponding Advisory Committee Notes.

■ First, as we have already identified, Rule 26(b)(4)(A) gives a party the right to depose an expert, which includes a treating physician.[9] It is Rule 26(b)(4)(C) that ad-

---

8. This Court has also found persuasive, as did Magistrate Judge Heckman, the reasoning announced in *Haslett v. Texas Indus., Inc.,* 1999 WL 354227, at *2 (N.D.Tex. May 20, 1999) in that:

> Physicians provide invaluable services to the public and should be remunerated for their time when they cannot deliver medical care. They often have substantial overhead costs that they incur whether they are creating a patient or testifying about one. Litigators and their clients typically obtain physician testimony by deposition rather than by imposing the additional burdens associated with attendance at trial. They also respect the need to compensate physician-witnesses to the extent necessary to cover their overhead costs and to pay them a fee commensurate with their professional standing and special expertise.

*Coleman v. Dydula,* 190 F.R.D. at 323–24.

It should also be duly noted that likewise within the Northern District of New York, especially with regard to state court practice, it is the practice to compensate a treating physician for his time whether at the deposition or at trial by providing a reasonable fee, though not universally honored. Plaintiff's counsel's experience has been that treating physicians are entitled to compensation, whereas the Defendants' attorneys, one current and the other a former Assistant Attorney General, have not had similar experiences.

9. FED. R. CIV. P. 26(b)(4)(A) reads as follows:

> A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If a report from the expert is required under subdivision (a)(2)(B), the deposition shall not be conducted until after the report is provided.

Extrapolating on this point, the Advisory Committee notes:

> [P]aragraph (4)(A) is revised to provide that experts who are expected to be witnesses will be subject to deposition prior to trial, conforming the norm stated in the rule to the actual practice followed in most courts, in which depositions of experts have become standard. Concerns regarding the expense of such depositions should be mitigated by the fact that the expert's fees for the deposition will ordinarily be borne by the party taking the deposition. The requirement under subdivision (a)(2)(B) of a complete and detailed report of the expected testimony of certain forensic experts may, moreover, eliminate the need for some such depositions or at least reduce the length of the depositions. *Accordingly, the deposition of an expert required by subdivision (a)(2)(B) to provide a written report may be taken only after the report has been served.*

FED. R. CIV. P. 26(b)(4)(A) (Advisory Committee Notes 1993 Amendment).

dresses the level of compensation for deposing experts. FED. R. CIV. P. 26(b)(4)(C) (Advisory Committee Notes, 1993 Amendment) ("Paragraph (4)(C), bearing on compensation of experts, is revised to take account of the changes in paragraph (4)(A).").  It reads as follows:

> Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision; and (ii) with respect to discovery obtained under subdivision (b)(4)(B) of this rule the court shall require the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

Under this statute's purview, it is rather clear to us that an expert is entitled to a reasonable fee from the party seeking the discovery, no matter if they are retained or not.  Reading all of these Rules together, they require payment of a reasonable fee to all experts who are disclosed under Rule 26(a)(2)(A) and deposed under Rule 26(b)(4)—"irrespective of whether they are retained experts, and irrespective of whether they are required to submit a report under Rule 26(a)(2)(B)." *Hoover v. United States*, 2002 WL 1949734, at *8 (N.D.Ill. Aug. 22, 2002).  Stated another way, which should not escape us, it is not the reporting requirement that generates a reasonable fee be paid but, rather, the deposition process itself, which blankets all experts. *Id.* at *7.

█ What is deemed a reasonable fee under these circumstances is not so apparent either.  Dr. Panzetta has advised Defendants that she seeks a retainer of $2,025 before she will continue with her deposition.  This retainer, presumably, considers the hours she has already been deposed (1½ hours), the anticipated hours remaining (approximately 2 hours) to complete the deposition, and some

time for preparation.  Under these circumstances, the retainer fee does not appear to be reasonable.  We asked the Plaintiff's attorney to ascertain what would be Dr. Panzetta's customary hourly rate and we have been informed that it is $185 per hour.  The determination of a reasonable fee and for what services, including preparation, falls solely within this Court's province. *New York v. Solvent Chem. Co., Inc.*, 210 F.R.D. 462, 2002 WL 31190938 (W.D.N.Y. Sept.27, 2002); *Am. Steel Products Corp. v. Penn Cent. Corp.*, 110 F.R.D. 151 (S.D.N.Y.1986) (finding that it is quite reasonable to expect that preparatory time to respond to discovery, whether by interrogatory or deposition, is a reasonable expense for the deposing party to assume.).  Therefore, the Court will give Dr. Panzetta credit for an 1½ hours for preparation and 3½ hours for testifying at a deposition, which totals to 5 hours, should the total time for the deposition take that long.  Five hours at the rate of $185 totals $925.  If the deposition takes longer than the estimate provided by the Court, then the cost of the deposition will increase exponentially.  Conversely, if less time is spent conducting the deposition, the fee decreases accordingly.  This fee for the deposition of Dr. Panzetta shall be shared equally between the State Defendants and Defendant Tuck, unless they agree otherwise. If however, the Defendants do not pursue a continuation of the deposition, in the interest of justice, no fee needs to be rendered for the deposition conducted thus far.[10]

## CONCLUSION

Based upon all of the foregoing reasons, the Court finds that the Defendants are entitled to a continuation of their deposition, interrogating the treating physician on matters consistent with this Memorandum Decision and Order, and paying a reasonable fee for such deposition.  Therefore, it is

---

Once again, and it may appear to be an insignificant observation, the caption of this section is *Trial Preparation: Experts*.  In our view, this is not inadvertent.

**10.**  This Memorandum Decision and Order will not consider whether Drs. Casals and McMorris are entitled to a reasonable fee nor the previous

1½ hours deposing Dr. Panzetta.  Their depositions are water "over" the dam, so to speak.  This Decision and Order pertains solely to the narrow facts generated by Dr. Panzetta's refusal to continue with her deposition unless she received a reasonable fee.

ORDERED, that Dr. Panzetta shall submit to a further deposition at the Defendants' option, on the scope of her treatment of Brenda Lamere at a time and place convenient for all parties; and it is further

ORDERED, that the Defendants may interrogate Dr. Panzetta to the extent consistent with this Memorandum Decision and Order; and it is further

ORDERED, that Dr. Panzetta is entitled a reasonable fee consistent with this Decision–Order. Prior to the deposition, the Defendants shall pay Dr. Panzetta the sum of $555. In the event, the deposition exceeds the time estimated by the Defendants to complete the deposition, the Defendants shall pay Dr. Panzetta the balance within thirty (30) days of the conclusion of the deposition.

SO ORDERED.

